**PROTEST of CARTER OIL CO.**

No. 21285. Opinion Filed Jan. 27, 1931.

Rehearing Denied March 10, 1931.

James A. Veasey, L. G. Owen, and Earl A. Brown, for protestant.

John L. Hodge, Co. Atty., Joe Brown, Asst. Co. Atty., Marvin Shilling, and Stephen A. George, for protestee.

ANDREWS, J. Zaneis consolidated school district No. 72, Carter county, a consolidated school district, included in its estimate for

the fiscal year commencing July 1, 1928, the sum of $15,560 for "Replacement of, or new vehicles" for transportation of pupils.

On the 28th day of August, 1928, the excise board made the appropriations for the school district and fixed the rate of levy for the school district. No appropriation was made for the item of "Replacement of, or new vehicles" for the reason that "their valuation was not sufficient." The record shows that the valuation of the school district was not sufficient to produce an amount within the 15 mills authorized rate of levy to provide appropriations for all of the estimated needs of the school district and that among the estimates for which no appropriations were made was the one in question here. The order of the county excise board became final, the rate of levy was certified to the county assessor, and the appropriations were certified to the school district. On the 29th day of August, 1928, a judgment was rendered by the district court of Carter county against the school district for $16,124 in favor of the W. S. Spears Motor Company for the school busses in question.

That judgment was listed by the school district in its estimate for the fiscal year commencing July 1, 1929, and the excise board of Carter county included one-third thereof and the interest on the entire amount in the appropriation for sinking fund purposes for the school district for that fiscal year and fixed the rate for sinking fund purposes on that calculation. The Carter Oil Company filed its protest before the Court of Tax Review, and, after full and complete hearing, that court rendered judgment sustaining the protest and directing the elimination of that judgment from the levy for sinking fund purposes for said school district for said fiscal year and the correction of the appropriation accordingly. From that judgment the excise board of Carter county has appealed to this court.

The Carter Oil Company will be hereinafter referred to as the protestant, the excise board of Carter county as the protestee, and the W. S. Spears Motor Company as the motor company.

The record before this court discloses that the petition on which the judgment was rendered by the district court of Carter county was verified by the vice president of the motor company on the 23rd day of August, 1928. The date of the filing of the petition in the district court was not shown by the record. Summons was issued, dated the 27th day of August, 1928, and was served on the director, clerk, and member of the school district on August 27, 1928. On August 29, 1928, Stephen A. George, as "attorney for defendant," filed an answer in the cause in that court, and on the 29th day of August, 1928, judgment was rendered.

It was alleged in the petition that on the 22nd day of August, 1928, the school district purchased from the motor company eight school busses for which it agreed to pay $17,025, less a credit of $900 for old busses owned by the school district and taken in exchange; that the busses had been delivered to the school district; that the motor company had filed a sworn claim with the clerk of the school district for the sum of $16,124; that the school district had failed and refused to pay the claim; "that said claim has been disallowed for reasons unknown to this plaintiff"; "that there are ample funds available under the control of said school district with which to pay for said busses, but said school district by its school board has failed and refused and still fails and refuses to pay for said school busses"; "that plaintiff has been put to great expense in procuring said busses and that said busses were built especially for the defendant school district at the instance and request of the school board of said defendant," and "that said busses are now ready for operation and in the possession of said school board." There was no allegation in the petition that any appropriation had been made for the purpose of purchasing the busses or that there was any available appropriation for that purpose.

We pause here long enough to remark that if those busses were purchased on the 22nd day of August, 1928, procured from Evansville, Ind., as testified to by the witnesses, built especially for the school district at the instance and request of the school district and delivered to the school district and in the possession of the school district on the 23rd day of August, 1928, there was some fast work done. The testimony at the trial, from the witnesses for the motor company (no one testified for the school district), is that the busses were made up on special order and that they were especially built for this school district. An officer of the motor company testified, "They have been made up by special order for this district and have already been lettered." There is no escape from the conclusion that if those busses had been in fact delivered to this school district at the time of the verification of the petition on the 23rd day of August, 1928, they must have been ordered before the 22nd day of August, 1928. No witness testified as to when they were ordered by

the school district, but the itemized statement attached to the petition shows August 22, 1928, as the date of sale.

The answer of the school district was a general denial.

The journal entry of judgment states that the school district was duly and lawfully served with summons, filed its answer and general denial of the allegations in the petition of the plaintiff, and "filed herein its general appearance and waiver of additional time to plead or answer to the petition of the plaintiff, and said defendant having requested that this cause be set down for trial instanter," and "all the parties having in open court waived a jury to hear, try and determine the issues." There is no finding as to when the purchase of these busses was made. The trial court found "that there were sufficient funds available for the payment * * * at the time said contract was consummated."

The petition did not state a cause of action, and the answer and petition, when construed together, come squarely within the rule announced by this court in Wood v. Phillips, Trustee, 95 Okla. 255, 219 Pac. 646, and followed by this court in In Re Gypsy Oil Company, 141 Okla. 291, 285 Pac. 67, and Faught v. City of Sapulpa, 145 Okla. 164, 292 Pac. 15. The general denial filed by the school district denies only the allegations of the petition. There was no allegation in the petition that any appropriation had ever been made for the purpose of purchasing school busses. The school district officers knew that there was no such appropriation when they filed their answer on the 19th day of August, 1928, for the reason that their request for an appropriation had been denied by order of the excise board on the 28th day of August, 1928. Yet the school district did not plead a defense which, under the Constitution of Oklahoma, as construed by this court, constitutes a complete defense, but contented themselves by filing a general denial, which did not raise an issue and which amounted to a confession of judgment. As we said in Re Gypsy Oil Company, supra:

"As shown by this record, the petitions did not state a cause of action. There was nothing in them to show that the claims sued on were legal, and if they were legal, there was nothing to show why warrants were not issued in payment thereof, and there was nothing to show that they were contracted within the appropriations made for the various fiscal years."

This court cannot give its approval and hold valid a judgment rendered on the 29th day of August, 1928, for busses purchased by a school district on the 22nd day of August, 1928, in the absence of proof that at the time of purchase there was an appropriation out of which the purchase could have been legally made or that such an appropriation had been thereafter made, when there has been no allegation made in the petition of such an appropriation. The fact that a warrant was not issued in payment therefor was, in itself, sufficient to attract the attention of the trial court and to cause the trial court to follow the language of this court in Wood v. Phillips, Trustee, supra, as follows:

"When such a condition as is here presented by the record is brought before the trial courts of this state, it is their duty to see that the interests of the county are properly protected, either by a defense in good faith interposed by the officers of the law, or that taxpayers who intervene develop all the facts, and that no judgment be entered against a county as here, tainted with such connivance and legal fraud as is here apparent from the reading of the record in this case."

The evidence taken before the trial court clearly discloses that the trial court was a party to the legal fraud perpetrated upon the taxpayers of the school district. The trial judge interrogated the witnesses as to the details of the exchange of the trucks, the condition of the old trucks, and the quality of the new ones. He inquired as to whether or not the people in the school district and the taxpayers knew of the deal, as to who purchased the old trucks from the motor company, and he heard the witness testify as follows:

"Q. Do you know why the estimate as submitted by the school district board, the item of $15,560 for replacement of, or new vehicles, for the purpose of purchasing these trucks were disallowed? A. Yes, sir. Q. Will you tell the court, please? A. Their valuation was not sufficient."

He heard the testimony of one of the school district officers testifying for the motor company, as follows:

"A. The people in general might not have known we were coming today; they knew we were asking for a judgment to pay for these trucks; everybody knew it. Q. (By the Court) Were you trying to keep it a secret, any efforts made by anyone, by you or any member of the board or anyone to conceal this matter? A. No, sir; the people around there, they all knew it. Q. They all knew it? A. Yes, sir."

Besides that, he heard the testimony of another of the school district officers testifying for the motor company, as follows:

"Q. (By Mr. George) How long has it been known that your valuation would not permit an appropriation for the purchase of these trucks? A. Two weeks; we put in an estimate and thought it was all right."

Two weeks prior to August 29, 1928, is August 11, 1928, which is 11 days prior to the date of the alleged purchase. This record shows and the trial judge should have known that on the date of the alleged purchase of these trucks the school district knew that it did not have an appropriation and would not have an appropriation for the payment of them.

The protestee contends that the proceedings before the Court of Tax Review was an attack before a special court of limited jurisdiction upon a judgment of a court of general jurisdiction, which is fair and regular on its face, and that such an attack cannot be maintained. The decisions hereinbefore cited are based upon decisions of this court therein referred to and are contrary to the contention of the protestee. The purchase of these trucks, as shown by this record, was in direct violation of the provisions of the Constitution of this state as construed by this court.

It is contended by the protestee that the transportation of school children, as provided by the act of the Legislature, is not within the provisions of section 26, art. 10, of the Constitution, but after a long line of decisions of this court to the contrary in effect, we decline to so hold. The indebtedness sought to be incurred was in nowise involuntary under the provisions of the Constitution. While it may have been involuntary under the act of the Legislature, we find nothing in the Constitution that in any way requires officers of a school district to transport the school children, and, being a legislative requirement, it cannot be construed as imposing an involuntary liability in conflict with the limitations of the Constitution.

Two thousand years ago, when the Prophet John had come down out of the wilderness and was preaching and baptizing, certain of those in the multitude gathered about him who were tax-gatherers or publicans, and he said to them, "Exact no more than that which is appointed you." The same thought is expressed in the Constitution of the state of Oklahoma, wherein the people spoke and said that no school district shall be allowed to become indebted in any manner or for any purpose to an amount exceeding in any year the income and revenue provided for such year without the assent of three-fifths of the voters thereof voting at an election to be held for that purpose (section 26, article 10,) and that the total taxes on an ad valorem basis for all purposes for a school district shall not exceed in any year 15 mills without the assent of three-fifths of the voters thereof voting at an election to be held for that purpose (section 9, art. 10).

Section 1, art. 13, of the Constitution must be construed in connection with the other sections thereof. While that section directs the Legislature to establish and maintain a system of free schools, the Constitution also provides that the total taxes on an ad valorem basis for all purposes for one of those schools shall not exceed in any year 15 mills without the assent of three-fifths of the voters thereof voting at an election to be held for that purpose as provided by sections 9 and 26, art. 10, Id.

Section 10465, C. O. S. 1921, provides for transportation of school children under certain circumstances.. It is a legislative act and the duty imposed upon the school district to transport the school children was imposed by the Legislature. That act does not require the transportation of school children without a valid appropriation for that purpose.

The purpose of the school district officers is disclosed by a statement of the protestee in its brief, as follows:

"Therefore, the trustees, desiring to act in good faith with the Spears Motor Company, and not desiring to obtain its property without making compensation therefor, and further as a protection to themselves against personal liability, were agreeable to an early adjudication of the matter. Consequently, they agreed to and did waive the time to plead and a full and complete hearing was had of the entire matter before the court, who held the transaction legal and entered judgment accordingly."

The school district officers may have desired to act in good faith with the motor company, but they are required by the Constitution of this state to act in good faith with the taxpayers of the district. The motor company knew of the constitutional limitations or was charged with knowledge thereof. School district officers may not, to protect themselves against personal liability, connive with claimants to establish an illegal liability against a school district, and courts may not enter into such an arrangement, thereby transferring individual liability to municipalities.

The protestee quotes from Faught v. City of Sapulpa, supra, as follows:

"* * * A general denial on the part of the municipality puts in issue those allegations and presents an issue to be tried, but an instrument denominated 'answer,' which as-

serts that the indebtedness sued on is valid and is unpaid for the reason that there are no funds with which to pay it does not put in issue those allegations."

The stars in that quotation represent the statement of this court as follows:

"In order to state a cause of action, the petition must allege that the indebtedness incurred was not in excess of the income and revenue provided for that purpose, or that it was authorized by a vote of the people."

The petition of the motor company contained no such allegation.

The protestee in its brief says:

"Again, it is well settled in this jurisdiction that where necessary, pleadings will be treated as amended to conform to the proof, admitted without objection. No objection was made to any evidence, and all the facts were fully disclosed to the court. We submit, therefore, that no just complaint can be made as to the sufficiency of the answer."

There was no evidence by which the petition could have been considered as amended.

We cannot understand the attitude of school district officers who, in the language of one of them, "were asking for a judgment to pay for these trucks." If this was a purchase of busses by these school district officers within the law, they could not have been in the slightest concerned with whether or not they were ever paid for until such time as a claim was filed with them requiring the allowance thereof and the issuance of a warrant in payment therefor. If this was a valid transaction, why did these officers disallow the claim? Why did they not allow the claim and issue a warrant in payment therefor in the regular course of business? Why were they anxious that a judgment be entered against the district that they represented? The answer is expressed by the protestee in its brief in the following language:

"Certainly, no honest trustee would want to obtain the property of another for his district without compensation, even if he could. And then, again, if the trucks were retained and the district was not liable, the trustees would have been. So, we re-assert that the trustees did just what any other conscientious, reasonable man would have done under the circumstances."

We cannot agree with that statement, and we are of the opinion that a conscientious and reasonable school district officer would try to conform with the law and would purchase property for the use of the school district only when an appropriation had been made and within the amount thereof.

In view of the fact that a large number of the decisions of this court on the issues involved here are referred to in the cases hereinbefore cited, we do not think it necessary to comment on them at length.

There is nothing in this record to indicate that the school district officers, the motor company, or the trial court acted from corrupt motives. Their efforts were to the end that the school district might have adequate transportation facilities for the use of the school children. The school district officers thought that an appropriation would be made out of which the busses might be purchased and they made their estimate accordingly. When they learned that the appropriation would not be made and could not be made, they were without facilities for the transportation of the school children and they did what they thought was for the best interests of the school district without considering, the limitations imposed by the Constitution or the interest of the taxpayers of the school district. The fact that they acted in good faith is of no avail and cannot be considered by this court in determining whether or not they violated the constitutional limitations imposed upon them.

The judgment of the Court of Tax Review is affirmed.

RILEY, CULLISON, SWINDALL, and McNEILL, JJ., concur. LESTER, C. J., CLARK, V. C. J., and HEFNER and LANGLEY, JJ., absent.