**PROTEST OF ST. LOUIS-S. F. R. CO. et al.**
**ST. LOUIS-S. F. R. CO. et al. v. TULSA COUNTY.**

No. 25812.    March 19, 1935.

J. W. Jamison and Cruce & Satterfield, for plaintiffs in error.

Holly L. Anderson, County Atty., Joe T. Dewberry, Asst. Co. Atty., for defendant in error and cross-petitioner in error.

WELCH, J. The question involved in con-

nection with protestants' appeal is the authority of the excise board to apportion the maximum millage rate of levy to the county and to the cities, towns, and school districts of the county in the manner as reflected by the following order made by that board:

"Motion was made by Merritt J. Glass, seconded by G. Ed Warren, that the 15 mills available for allocation to all municipalities of Tulsa county be made in the following manner: That the county levy for all purposes other than the sinking fund be four and five-eighths (4⅝) mills; that in cities and school districts whose valuation is less than one million dollars the school levy shall not exceed five (5) mills in addition to that authorized by the vote of the people and the city shall not exceed five and three-eighths (5⅜) mills; that in cities and school districts whose valuation is more than one million dollars the school levy shall not exceed four (4) mills in addition to that authorized by the vote of the people, and the city shall not exceed six and three-eighths (6⅜) mills. Upon roll call, all voting in the affirmative, the motion was by the chairman declared carried. Nothing further to come before the meeting, same is hereby recessed until Friday, December 22, 1933."

The school districts involved in the instant case are districts having a valuation of less than $1,000,000, and therefore under the classification of same in the above-quoted order of the excise board they are school districts to which the excise board apportioned a limit of 5 mills. Protestants maintain that by reason of the fact that the excise board had apportioned 4⅝ mills to the county, and 6⅜ mills to certain cities within the county, the total of which amounted to 11 mills, the total which could be apportioned to the school districts within the millage limit of 15 mills as provided by the 1933 constitutional amendment to section 9, article 10, of the State Constitution was 4 mills. The protestants claim, therefore, that the levy is excessive to the extent of one mill. The total allowed and apportioned in the particular school districts involved did not exceed the 15-mill total limit.

The controversy centers upon the question whether or not the excise board, under its grant of power contained in the 1933 amendment to section 9, article 10, of the Constitution, may classify the various municipal subdivisions in such manner. A closely related question was considered by this court in the case of A., T. & S. F. Ry. Co. v. Excise Board of Washington County, 168 Okla. 619, 35 P. (2d) 274. Therein this court in discussing the 1933 constitutional amendment used the following expressions:

"The act in question very plainly grants to the excise boards the authority to apportion the 15 mills to the various municipalities. This constitutes a self-executing grant of power to the county excise boards. * * *"

And again:

"The right of the excise board to apportion the maximum amount of tax is as all-inclusive as is the right of the future Legislature to regularly apportion the same. The succeeding Legislature cannot be restricted in its function by the prior act (House Bill No. 387, Laws 1933, ch. 122) nor can the excise board be so restricted. * * *"

And:

"In the consideration of the necessities of the people of the various municipalities, it was contemplated that the excise board, previously set up by the Legislature as an important tribunal in the general scheme of taxation, would be cognizant of the local existing conditions, and would apply a proper and flexible discretion in apportioning the total taxes authorized to be levied by the amended provision."

And:

"The question is not raised for determination in this case, but owing to the fact that a public question is involved and confusion may occur in the making of levies for the fiscal year 1934-35, we deem it proper to express our view upon the question of the proper manner of apportionment. The excise board should by general resolution, before levy, apportion to the county, cities, towns, and school districts the maximum number of mills, not exceeding 15 mills, which may be levied for such year. In so doing, it is authorized to classify such municipalities in accordance with constitutional or statutory classifications. But the apportionment so made should be applied generally to each particular classification."

It is to be observed from the quoted excerpts in the Washington County Case, supra, that this court concluded that the 1933 constitutional amendment granted power to excise boards to apportion the 15 mills, until the Legislature should fix apportionment, and that such power "is as all-inclusive as is the right of the future Legislature to regularly apportion the same." We take it as being beyond serious question that the Legislature could apportion the rate of tax levy among the various municipal subdivisions involved, and that in so doing it would be governed only by applicable general rules of law, relating to classification

of municipalities for taxation purposes, and relating to the general application of the levy as to each classification.

Then it would follow that this voted constitutional amendment gave to the excise board the authority to make the order it did make, provided only that such order does not conflict with the constitutional and statutory rules relating to classification and to its general application to each particular classification, as expressed by this court in the last above quoted paragraph of the Washington County Case, supra.

The excise board has submitted to us in its brief a number of authorities which indicate strongly that the order of the excise board in the instant case does not violate any of the rules of law relating to classification and general application of the levy as to each classification.

The brief and authorities on the part of the protestants are confined chiefly to phases of the question other than whether or not the order satisfies the law with reference to classification and general application. It is our conclusion that the order of the excise board in the instant case, and as presented to us here, appears to be a classification of such municipalities in accordance with constitutional and statutory rules of classification, and that the apportionment so made applies generally in each particular classification, and it is not made to appear otherwise from the authorities submitted to us by the protestants.

The judgment of the Court of Tax Review on the question raised by protestants' appeal is affirmed.

The county in its cross-appeal urges error of the Court of Tax Review in sustaining the protest as to the city of Tulsa sinking fund levy for two judgments previously rendered against the city of Tulsa, in the district court. In district court cause No. 16610 judgment was rendered in favor of the Gates Hardware Company for merchandise and supplies sold the city, and in district court cause No. 48985 judgment was rendered in favor of Conn Linn for legal services rendered to the city in aiding and assisting the city attorney in certain important litigation in which he was specially employed.

As to the Gates judgment, it was attacked in the Court of Tax Review upon the theory that the sheriff was requested to serve the summons on the auditor without attempting to ascertain whether the mayor was in the city or absent therefrom; and the further objection to the sufficiency of the pleadings to present the issue whether or not the contracted expenditure was within the estimate made and approved, or within the appropriation. The defendant, city of Tulsa, appeared, filed answer, and contested the recovery. The plaintiff filed reply, and the trial resulted in the judgment in favor of the plaintiff, Gates Hardware Company. The protestant, in its brief, suggests that the appearance and answer by the defendant probably cured the error, if any, in the service of the original process, and offers to confess error if this court approves. We observe from the pleadings that the issue is raised as to whether the agreed expenditure was or was not in excess of, or in absence of, lawful appropriations. We therefore observe no reason for holding the judgment void on collateral attack.

As to the Linn judgment, it was attacked in the Court of Tax Review upon the theory that the allegations of the pleadings were not sufficient to put in issue the question as to whether or not the agreed expenditure was within or in excess of or in the absence of an estimate made or approved or an appropriation; and upon the theory that in any event the city was without power to employ an attorney to aid and assist the city attorney. Upon the first proposition we observe that the pleadings raise the issue as to the appropriation in much the same manner as that issue was raised in the pleadings in the Gates case. That presented a question of fact to be determined by the trial court. We do not here pass upon the question of fact whether the Gates claim or the Linn claim was within the appropriation. If these judgments were before this court on direct attack by regular appeal, we might consider all the facts, but we cannot do so now, since we are here considering these judgments on collateral attack where it is insisted that they are void as shown by the judgment roll, not merely that they are erroneous as to some one or more details. The judgment against the city determined all of the facts in issue against the city Upon the second objection urged to the Linn judgment, we observe that the charter of the city of Tulsa, in article 4 thereof, after creating the office of city attorney and providing for his selection and designating his duties, provides specifically that:

"The board of commissioners shall be empowered at its discretion to employ an assistant or assistants for said officer, and to fix the compensation to be paid for such services."

The protestant contends that the Tulsa city commissioners have no more authority as to the employment of an attorney to assist the city attorney than the county commissioners of the various counties of the state have as to employment of an attorney to aid or assist the county attorney. We have held that county commissioners may not employ an attorney to aid and assist the county attorney, and the protestant here relies upon those decisions. See Board of County Commissioners v. King, 147 Okla. 34, 294 P. 101; Board of Education v. Thurman, 121 Okla. 108, 247 P. 996; Board of County Commissioners v. Jones, 4 Okla. 341, 51 P. 565.

Those decisions are not applicable here by reason of the provisions of the charter of the city of Tulsa. The state laws nowhere authorize county commissioners to employ attorneys to assist the county attorney, and by reason thereof county commissioners are restricted to the use of the county attorney and his regularly appointed and qualified assistants provided for by the laws of this state. There is no such restriction upon the Tulsa city commissioners, as appears from the charter provisions.

The appointment or employment of Mr. Linn was made verbally in the first instance, but soon thereafter it was made or confirmed by official action and resolution of the board of city commissioners. It therefore appears that his claim for compensation was based upon an employment authorized by law. He rendered the service, recovered a judgment for his compensation in the district court, and that judgment became final. It has never been vacated or set aside, and so far as we know no effort has been made to have it vacated or set aside. Such a judgment is not vulnerable to attack before the Court of Tax Review unless shown by the judgment roll to be void for jurisdictional defect.

It is not every defect or omission appearing in pleadings or in the journal entry of judgment that will render the judgment void and subject to such collateral attack. See Protest of St. Louis-San Francisco Railway Co., 157 Okla. 131, 11 P. (2d) 189; Protest of St. Louis-San Francisco Railway Co., 162 Okla. 62, 19 P. (2d) 162; Protest of Gulf Pipe Line Co., 168 Okla. 136, 32 P. (2d) 42; Protest of St. Louis-San Francisco Railway Co., 170 Okla. 11, 38 P. (2d) 954.

Our attention is directed to protest of Carter Oil Co., 148 Okla. 1, 296 P. 485, and Excise Board of Carter County v. Chicago, R. I. & P. Ry. Co., 152 Okla. 120, 3 P. (2d) 1037. In those cases we held the judgments void and subject to collateral attack, but they are easily distinguished from the case at bar.

We deem it unnecessary here to repeat at length the rules which apply in considering judgments attacked by tax protests, or the wholesome reasons for such rules. These matters are discussed in our former opinions cited.

We are here considering the validity of these judgments on collateral attack, and, as against such attack at least, we conclude that the power of the city commissioners to employ an attorney sufficiently appears, and that the validity of both these judgments is sufficiently shown.

We therefore conclude that the Court of Tax Review erred in sustaining the protest to the city of Tulsa sinking fund levy for the Gates and Linn judgments, and the judgment of that court to that extent is reversed.

The next question raised by the cross-appeal involves the question of whether or not the excise board was required to consider and deduct the sum of $12,833.18, being 5 per cent. of the estimated income to the county from automobile and gasoline excise taxes, in calculating the sum needed and the rate of levy for county sinking fund purposes. The excise board refused to consider the item in its calculation for such purposes, resulting in a greater levy than otherwise necessary, had the item been considered in its calculation. No question is raised as to the amount of the item. We consider the point decided in Sutton v. Kelka, 141 Okla. 233, 285 P. 1, and Acres v. Excise Board of Muskogee County, 149 Okla. 84, 299 P. 136. Therein we held that 5 per cent. of such estimated income from such sources must be considered by the excise board in reducing the sinking fund levies in such cases as we have here under consideration. Section 12539, O. S. 1931. is the statutory provision involving the question. The excise board contends that section 12539, supra, was repealed by implication by the enactment of chapter 137, S. L. 1933, urging that the 1933 act provides the use of the county's portion of such that is inconsistent with the use thereof provided by section 12539, supra. We find no inconsistency in the two legislative enactments in this regard. Section 12539,

184

supra, makes it mandatory that as much as 5 per cent. of such funds be used in reducing sinking fund levies in certain cases. Chapter 137, S. L. 1933, provides for using other portions of such funds for other purposes. Both of the acts were designed for a distinct and separate purpose and are not in conflict. The judgment of the Court of Tax Review sustaining the protest in this regard is affirmed.

McNEILL, C. J., OSBORN, V. C. J., and RILEY, BAYLESS, BUSBY, PHELPS, CORN, and GIBSON, JJ., concur.

Mr. Justice GIBSON concurs specially. He does not agree with the rule stated in paragraph 1 of the syllabus. He observes that this rule has been heretofore announced by the court in the Washington County Case cited, and has since been followed by the court, but he does not feel that such construction of the 1933 amendment to section 9, article 10, of the Constitution is fully justified. In all other respects he concurs in the opinion.